STATE ex rel. C. C. CLARK and others *vs.* E. R. STANLEY and others.

1. "The Governor shall nominate, and, by and with the advice and consent of a majority of the Senators elect, appoint, all officers, whose offices are established by this Constitution, or which shall be created by law, and whose appointments are not otherwise provided for, and no such officer shall be appointed or elected by the General Assembly. Section 10, Article 3, Constitution."

2. The words contained in the above section of the Constitution, "whose appointments are not otherwise provided for," mean provided for by the Constitution, and the words "no such officer shall be appointed or elected by the General Assembly," are superadded as an express veto upon the power of the General Assembly, whether such office be established by the Constitution or be created by an Act of the General Assembly.

3. A public office is an agency for the State; and the person, whose duty it is to perform that agency, is a public officer. Nor does it make any difference whether he receives a salary and fees and takes an oath, these being mere incidents and no part of the office itself. Nor is it material whether one act or a series of acts are required to be done.

4. The Act of the General Assembly, passed April 6th, 1871,* giving to the President cf the Senate and Speaker of the House of Representatives, the

---

*An Act to change the method of appointing proxies and directors in all corporations in which the State has an interest:

Section 1. *The General Assembly do enact,* That all power now vested in the Governor of the State to appoint a proxy or proxies or directors to represent the interest of the State, in any corporation or Company in which the State has an interest, be and the same is hereby revoked and annulled.

Section 2. That the President of the Senate and Speaker of the House of Representatives, are hereby authorized and empowered by a paper writing signed by them, to appoint all proxies and directors in all corporations in which the State has an interest.

Section 3. All laws in conflict with this Act are hereby repealed.

Section 4. This Act shall be in force from and after its ratification.

Ratified 6th day of April 1871.

power to appoint "all proxies and directors in all corporations in which the State has an interest," creates a public office and fills the same by appointment of the Legislature.

5. The power of the General Assembly to repeal an Act, which had been passed since the adoption of the Constitution, and accepted by the Railroad Company as an amendment to their charter, discussed by Pearson, C. J.

*Hoke vs. Henderson*, 4 Dev. 12
*Worthy vs. Barrett*, 63 N. C. R. 199, cited and commented on.

This was an action in the nature of a *Quo Warranto* brought by the relators of the plaintiff against the defendants. The summons was returnable to Fall Term 1871 of Craven Superior Court. Before the application of the relators of the plaintiff an order of injunction had been issued by His Honor, R. P. Dick, restraining the defendants from leasing or disposing of the property and franchise of the Atlantic and North Carolina Railroad Company to the Pennsylvania Central Railroad Company or to any other person until the further order of the Judge of the 3d Judicial District. At the return term of the Superior Court for Craven county, the defendants filed their answer, and on motion, the injunction order theretofore issued was vacated by His Honor, Wm. J. Clarke and judgment rendered against plaintiff for costs. From this judgment the relators of plaintiff appealed to the Supreme Court. To understand the opinion of the Court, a brief statement of the facts is all that is thought to be necessary. The relators of the plaintiff alleged in their complaint, in substance, that they were the legal and rightful Board of Directors of the Atlantic and North Carolina Railroad Company; that by virtue of an Act of the General Assembly, ratified on the 6th day of April, 1871, authorizing and empowering the President of the Senate and Speaker of the House of Representatives to appoint proxies and directors on the part of the State in all corporations in which the State has an interest. E. J. Warren, President of the Senate, and Thomas J. Jarvis,

Speaker of the House of Representatives, had issued commissions to C. C. Clark and others as directors on the part of the State in the said Railroad Company; that at a regular meeting of the Stockholders other directors were elected to represent the private Stockholders, and that a President and other officers were elected. That the defendants are now in possession, claiming to be directors and refused to surrender possession of the property &c., of the said Company, and that they had intruded into and usurped the offices of the said Railroad Company without authority of law. They asked judgment that they be declared the legal and rightful Directors of the Atlantic and North Carolina Railroad Company, that the defendants be ousted therefrom, and plaintiffs be put in possession. For an injunction and receiver.

Defendants in their answer insisted that they were the rightful directors of the A. & N. C. R. R. Co. That they claimed to hold the same under the provisions of the charter and the law of the land, authorizing and empowering the Governor of the State to appoint directors, &c. That the Governor had issued commissions to a number of the defendants as directors on the part of the State and that the others had been legally and properly elected in a meeting of the Stockholders under the provisions of the charter of the company. They denied the right of the plaintiffs under the appointments made by the President of the Senate and Speaker of the House of Representatives. That the act of the General Assembly which conferred this power upon them was unconstitutional.

*J. H. Haughton,* who appeared for the relators took the following positions, which were elaborately argued:

I.   That the Constitution, sec. 1, art. 3, has created the office of Superintendent of Public Works. In sec. 13 of same article, it is declared that his duties shall be prescribed by law, and that such duties were prescribed by the act of 1868 –'69, chap. 270.

II.   That the Constitution having once conferred the power upon the legislature to prescribe the duties of this officer, with

reference to the State's interest, in improvements already done and in process of completion, the whole subject matter is submitted to the discretion of that body, and " therefore the Supreme Court is not capable of controlling the *exercise* of power on the part of the General Assembly." *Broadnax vs. Groom*, 64, N. C., 250.

III. That having this *power* to give the appointment of State directors, &c., to Superintendent of public works, the General Assembly could withdraw such right and confer it upon another, as they had done in the acts of 1869–'70, chap. 112, giving to the Governor and counsel, and that by virtue of the same power, by the Act of 1870–'71, they took this authority from the Governor and conferred it upon the President of the Senate and Speaker of the House.

IV. That this view is in harmony with sec. 10, art. 3. That this section was not intended to apply to the manner of appointing proxies and directors, but only to those who have been recognized as officers, a proper classification of whom had been given by the Court in *Worthy v. Barret*, 63 N. C. R., and this act of April 5th, 1871, empowering the President of the Senate and Speaker of the House to appoint, did not create any office at all, but if the right to appoint directors, &c., was an office it was created by the charter of the corporation, A. & N. C. R. R. Company, which existed at the adoption of the Constitution.

V. That the provisions of sec. 10, art. 3, does not apply because this office (if one) had already been provided for prior to the Constitution and was therefore *otherwise* provided for, and that said 10th section does not, for the reason stated, apply to the act of April 6th, 1871, under which the plaintiffs claim their appointments.

*Phillips & Merrimon* for defendants.

PEARSON, C. J. " The Governor shall nominate, and by and with the advice and consent of a majority of the Senators

elect, appoint all officers whose offices are established by this Constitution, which shall be created by law, and whose appointments are not otherwise provided for, and no such officer shall be appointed or elected by the General Assembly."— Art. iii, section 10, of the Constitution.

The words—" whose appointments are not otherwise provided for,"—evidently mean : provided for by the Constitution, and the words : " No such officer shall be appointed or elected by the General Assembly," are superadded as an express veto upon the power of the General Assembly, to appoint or to elect an officer, whether the office is established by the Constitution or shall be created by an act of the General Assembly.

This construction was not contested on the argument, and the case was put by the counsel of the plaintiffs on the ground that the Act of April, 1871, which authorizes the President of the Senate and the Speaker of the House of Representatives to appoint proxies and directors for the State in all corporations in which the State is a stockholder, does not create an office.

On the part of the defendants, it was insisted : That the Act of April, 1871, does create an office, and that the General Assembly appointed officers to fill this new office in violation of art. iii, sec. 10, of the Constitution.

A public office is an agency for the State, and the person whose duty it is to perform this agency is a public officer. This, we consider to be the true definition of a public officer in its original broad sense. The essence of it is, the duty of performing an agency, that is, of doing some act or acts, or series of acts for the State.

Public officers are usually required to take an oath, and usually a salary or fees are annexed to the office, in which case it is an office "coupled with an interest." But the oath and the salary or fees, are mere incidents, and constitute no part of the office : Where no salary or fees are annexed to the office, it is a naked office—honorary,—and is supposed to be accepted, merely for the public good. This definition also

excludes the idea, that a public office must have continuance. It can make no difference, whether there be but one act, or a series of acts to be done—whether the office expires as soon as the one act is done, or is to be held for years or during good behavior.  This incident, however, need not be considered, for here is continuance: the duty is imposed upon the President of the Senate, and the Speaker of the House of Representatives, for all time to come.

To illustrate our definition : The Executive Department is an agency for the State, and the Governor and others, whose duty it is to discharge this agency, are public officers.

The Judicial Department is an agency for the State, and the Judges are public officers.

The Legislative Department is an agency for the State, and the members of the Senate and of the House of Representatives, are public officers.

If it be objected, Worthy *v.* Barrett, 63 N. C., 199 speaks of members of Congress and members of the General Assembly as not being public officers, the reply is : The language used in that case has reference to the wording of the 14th article of the Amendments to the Constitution of the United States, in which the " Senators and Representatives in Congress and members of the State Legislatures" are nominated, because of being prominent objects—easily pointed out by specific terms ; but in regard to the other objects, they could not be pointed out, or nominated by terms so specific, and recourse was had to the more general term, " executive and judicial officers," so the inference that " members of Congress and members of the General Assembly" are excluded from the original and broad sense of " public officers" is by no means logical.  But suppose, in some way, either in that above indicated, or by inadvertence in cases not calling for a precise definition : " Members of Congress and members of the General Assembly" have been taken out of the definition of " public officers," and are to be styled " public servants."  A.

distinction without a difference, that does not affect an argument, and we may allow this anomalous exception, without at all impairing the force of the conclusion drawn from the legal meaning of a " public officer." The distinction between Worthy *v.* Barrett is this: here, we are treating the terms "public offices and public officers," in the broad, original legal sense in which these terms are used in the Constitution of the State. There we were treating the terms in the restricted sense, in which they are used in the 14th article of the Amendments of the Constitution of the United States.

The instances given are offices coupled with an interest. The management of the University is an agency for the State, and the Trustees upon whom is imposed the duty of discharging this agency, are public officers. This office is naked and merely honorary.

Suppose it be enacted by the General Assembly: " There shall be some fit person, whose duty it shall be, to see, that all persons against whom there is probable cause for the charge of felony, are forthwith arrested, and in case any person shall flee from justice, to offer a reward for his apprehension."

SEC. 2. It is further enacted " that John Smith discharge the duties aforesaid." This is an agency for the State; a public office; it makes no difference whether it be styled " office of General of Police," or has no name, or whether there be an oath or not, it is to all intents and purposes a public office. The constitutionality of the act might be questioned, because to make this new office, a duty or function of the Executive Department is taken away; in other words, the material out of which this new office is manufactured is taken from the Governor; and in the second place, because the General Assembly has filled this new office by its own appointment, contrary to the express provision of the Constitution—" no such officer shall be appointed or elected by the General Assembly."

Again :—suppose an act :—Whereas, experience has proved, that the Governor has made an ill use of the power of appoint-

ment, it is enacted : there shall be two fit persons to be styled " appointers general," whose duty it shall be to appoint all public officers and to fill all vacancies.

SEC. 2.　It is further enacted,—" the President of the Senate and the Speaker of the House of Representatives, shall be the appointers general."　This act is clearly unconstitutional ; for, in the first place, in order to create this new office, it takes from the Governor, a duty or function vested in him by the Constitution ; and in the second place, the General Assembly fills the office by its own appointment, contrary to the express veto of that instrument.

This is the case under consideration.　True, it is on a larger scale and covers more ground ; but although differing in degree it is the same in principle.　A new office is created ; it is not so in name, but is in effect the office of " appointors for officers in all corporations in which the State is a stockholder," and in order to create the office a duty or function of his office is taken from the Executive, and the appointment of these " appointors for corporations " is made by the General Assembly.

If it be said, there is this distinction :　The " appointors general " in the supposed act, are to appoint all State officers, whereas, the " appointors for corporations " are confined to State proxies and directors, and these are not officers of the State, but of a corporation in which the State is a stockholder. The reply is :　This is a distinction without a difference,— even should it be conceded, that the proxies and directors are not public officers—into which question we will not enter, for our concern is with the office of " appointors for corporations " and not with the persons they may appoint to these offices.　To the suggestion, the Act of April 1871, does not purport to create an office or to fill it, the reply is : such, obviously, is the legal effect of the act.　When analyzed, it will be found to contain two provisions : there shall be an agency for the State to make the appointment of all State proxies and

State directors in corporations. This creates a public office, and it can make no difference that it is called the office of appointers of State officers for corporations, or has no name given to it; in the second place, the officers who are to discharge this duty are appointed by the General Assembly.

We declare our opinion to be, that the statute is unconstitutional, and that the relators are not entitled to the offices claimed. We put our opinion upon familiar principles and plain analogies of the law which are intelligible to every one. The many cases cited on the learned argument with which we were favored, are not referred to, because a full discussion of them would tend rather to obscure than to elucidate the subject.

We will only refer to *Hoke* v. *Henderson*, 4 Devereux 12; that mine from which so much rich ore has been dug. In the able and elaborate opinion of Chief Justice Ruffin, we find an instance of a public officer clearly in point, which fully confirms our conclusion. It sustains the distinction between a naked honorary office like the one which we have been discussing and an office coupled with an interest. It sustains our conclusion, that the duty of *appointing to an office, constitutes of itself* a public officer, and there is the further coincidence of indefinite continuance by conferring the new office upon the incumbents of offices already established. On page 21 he says: " The distinction in principle between agencies of the two kinds is obvious, the one is for the public use exclusively, often neither lucrative nor honorary, but onerous. The other is for the public service conjointly with a benefit to the officers. The distinction which I am endeavoring to express, may be fully exemplified by the difference between the public agency in appointing, and that exercised in discharging the duties of a Clerk. By the law the Judges of the Superior Courts, and the Justices of the County Courts were authorized to appoint the Clerks of their respective Courts; that power is *an office* in the extended sense of that word, which originally signifies duty generally, but it is not a lucrative or valuable

office ; it was a duty to be performed exclusively for the public convenience, and with reference to it alone, without any benefit immediate or remote to the Judges or Justices as individuals. · " The Courts in this respect are not exercising a *Judicial* function, not serving for emoluments, but were mere ministers of the law, and naked agents of the body politic, to effect an end purely public." " But when the country has through those agents appointed a Clerk, though he is also a servant of the public, yet he is something more than a naked, uninterested political agent."

2. Another ground was taken for the defendants : It is the one on which his Honor in the Court below put his opinion. By the Act of 24th of March, 1870, the Governor is authorized to appoint proxies and directors for the State in corporations in which the State was a stockholder, prior to the adoption of the present Constitution. This act was assented to, as an amendment of the charter by the corporators of the Atlantic & N. C. Railroad Company, at a general meeting in June, 1870 ; and it is insisted that the Act of April, 1871, which authorizes the President of the Senate and the Speaker of the House of Representatives, to appoint proxies and directors for the State, in all corporations in which the State is a stockholder, and repeals all laws in conflict therewith, and forbids the Governor to make such appointments, is unconstitutional in this : It violates the charter of the company, and varies the contract without the assent of the corporators. Reply : It may be the company has a right to complain of this change in the charter, but it is an act of the State, and as both the defendants and the plaintiffs profess to be acting under the authority of the State, neither can be heard to make the objection. Rejoinder: The defendants' title is not involved ; the title of the relators· is alone in question ; and they cannot make a good title under an act which involves the charter of the company. Surrejoinder: By article VIII, section 1 of the Constitution : " corporations may be formed

under general laws," &c.;—" all general laws and special acts passed pursuant to this section may be altered from time to time, or repealed;"—true, this does not apply to corporations chartered before the adoption of the Constitution, but the Atlantic and North Carolina Railroad Company by accepting the amendment of their charter by act of March, 1870, placed itself, in that respect, upon the footing of a corporation chartered after the adoption of the Constitution; and the power of the General Assembly to alter the charter from time to time, or to repeal the amendments, attaches to this corporaration.

This is an interesting question, into which we will not enter, as its determination is not necessary for the purpose of our decision, and in regard to it, the corporation has not been heard.

The judgment of the Court below is affirmed with costs.