WILLIAM S. McCORNICK AND OTHERS, RESPONDENTS, *v.* GEORGE W. THATCHER AND OTHERS, APPELLANTS.

OFFICE AND OFFICER. — ORGANIC ACT. — TRUSTEES OF PUBLIC COLLEGE.— Trustees of a territorial college designed to be one of the permanent institutions of the territory, who were to have control of the college and appoint professors and teachers and remove them, and were also to have control of the experiment station connected therewith, and manage the same, and make reports thereof to Congress, who were to qualify by giving bond and receive compensation for their services are "officers" within the meaning of the organic act providing that all officers not therein otherwise provided for, shall be nominated by the governor.

ID.— ID.— BOARD OF CONSTRUCTION OF COLLEGE.— The members of a board of construction who were to draw and expend an appropriation for an Agricultural College, which was a public institution, who were to perform an important public trust, whose duties were of a continuing nature prescribed by law, who were to give bond and take an official oath are "officers" within the meaning of the organic act providing that all officers not therein otherwise provided for, should be nominated by the governor.

STATUTORY CONSTRUCTION.— ORGANIC ACT.— CONFLICTING TERRITORIAL LAW.— Territorial acts providing that the governor and secretary of the Territory and the assessors of Cache, Davis, Utah, Salt Lake, and San Pete counties should be trustees of the Agricultural College, and providing that certain persons named in the act should be the board of construction of such Agricultural College are invalid, because the organic act provides that all officers, not township, district and county officers, and not therein otherwise provided for, shall be nominated by the governor, and because such acts are not provided for in the organic act, and are not township, district or county officers.

Id.— Agricultural College.— Superseding Act.— Sections 1852 to 1872, 1 Comp. Laws, 1888, passed March 8, 1888, provided for the organization of an Agricultural College, giving the whole control thereof to a board of trustees, who were given power to expend all appropriations for the college. An act passed March 10, 1892, appropriated $65,000 to this college, which sum should be expended under a board of construction, who were named in the act; *held* that the act of 1892 superseded the act of 1888 as to the expenditure of the appropriation, and although the naming of the board in the bill was illegal and contrary to the, organic act, yet the board of trustees could not expend the appropriation.

Appeal from a judgment of the district court of the first district. The opinion states the facts.

*Mr. H. W. Smith* and *Mr. W. T. Maginnis,* for the appellants.

*Mr. Ransford Smith* and *Mr. W. H. Smith* for the respondents.

Anderson, J.

The plaintiffs, as trustees of the Agricultural College of Utah, made application for an alternative writ of mandate against the defendant, as auditor of public accounts for the Territory, to draw his warrant on the territorial treasurer for the sum of $65,000 in favor of the treasurer of the board of trustees, or show cause why he should not do so. The writ was issued and the application was afterwards amended so as to apply only to one-fourth of said sum, in accordance with the provisions of § 26, c. 3, p. 253, 1 Comp. Laws, which requires that for all appropriations of more than $5,000 the auditor shall issue warrants for the same in equal quarter-yearly installments. The members of the board of construction named in the act making the appropriation intervened in the action, and prayed that the mandate for the warrant be awarded to them as members of such board. The plaintiffs demurred

to the petition of intervention, and the defendant demurred to the petition of intervention, and also to the plaintiffs' petition and alternative writ. Both of the demurrers to the petition in intervention were sustained, and the defendant's demurrer to the plaintiffs' petition, and the writ was overruled. The defendant failing to answer, and the interveners to amend, the peremptory writ was awarded to plaintiffs. From these orders and judgment the interveners bring this appeal.

The application and affidavit of the plaintiffs for a writ of mandate against the defendant, Arthur Pratt, auditor of public accounts, set forth that they are the duly appointed, qualified, and acting trustees of the Agricultural College, a public educational institution, organized under the laws of Utah Territory, having been duly nominated and appointed by the governor of said Territory as such trustees by and with the advice and consent of the legislative council of said Territory, prior to the demand for a warrant for the funds in controversy; that as such trustees they have duly organized and elected William S. McCornick president, and have appointed a secretary and treasurer, who have duly qualified as such officers; that by the laws of Utah the said trustees are authorized and required to take charge of the general interests of said institution, and to have general control and supervision of all appropriations made by the Territory for the support and maintenance of the same, and to have supervision of the erection of the college buildings, and to make all contracts and purchases for said buildings; that said college has been duly organized, and has buildings and grounds at Logan, in Cache county; that the legislature of the Territory, by an act approved March 10, 1892, entitled "An act making appropriations for general purposes," made an appropriation for the Agricultural College, as follows: "Sec. 5. For the Agricultural College of Utah, buildings, the sum of $65,-000.00; which sum shall be expended by and under the

direction of a board of construction, to consist of George W. Thatcher, Isaac D. Haines, and William Goodwin, who shall each receive for their services the sum of $300, to be paid upon the completion of said buildings. Said board of construction shall each give a bond in the sum of $25,000, to be approved by the territorial auditor, and qualify by taking the official oath before entering upon their duties. Such board shall elect a chairman, and warrants for the money appropriated for said buildings shall be drawn by the auditor of . public accounts upon the order of such chairman." It is further set out that none of the members of said board of construction have been nominated or appointed by the governor of the Territory, and that there were unappropriated funds in the hands of the territorial treasurer sufficient to pay the amount of said appropriation on the 9th day of May, 1892; and that on that day the plaintiffs, as trustees of said college, duly demanded of the territorial auditor that he issue a warrant upon the territorial treasurer for the amount of the appropriation, payable to the treasurer of said board of trustees, which the auditor refused to do.    This application and affidavit were afterwards amended, setting out that the plaintiffs, on the same day on which the first demand was made, duly demanded of the auditor that he issue to the treasurer of said trustees a warrant upon the territorial treasurer for one-fourth of the amount of the appropriation.    The petition of intervention set out that the interveners were the persons named in the appropriation act as constituting the board of construction, and are entitled to the warrants for the appropriation of $65,000 sought to be obtained in this proceeding by the plaintiffs; that prior to May 1, 1892, they duly qualified as members of such board of construction by each giving a bond in the sum of $25,000, duly approved by the territorial auditor, and by taking the official oath required by law before entering upon their duties, and that the board was fully organized before the 1st day of May, .

1892, that on the 8th day of May, 1892, the chairman of the board demanded of the territorial auditor that he draw the warrants for the said $65,000 in favor of such board, which he refused to do, and asked judgment that he be required to issue said warrants to said board of construction.

The Agricultural College was organized under an act of the territorial legislature approved March 8, 1888 (1 Comp. Laws 1888, p. 663). The act placed the business and financial affairs of the college in the hands of a board of seven trustees, and gave this board general control and supervision of the college, the farm connected with it, any lands which might be granted or donated to it by the Territory or by Congress, all appropriations made by the Territory for its support, and the supervision of the erection of the college buildings, and provided they should make all purchases and contracts for the buildings. Section 3 of this act (1 Comp. Laws, p. 664) provides that "the governor and secretary of the Territory, and the assessors of the counties of Cache, Davis, Utah, Salt Lake, and San Pete and their successors in office, shall be *ex officio* trustees for the Agricultural College." Counsel for interveners contend that, inasmuch as it is not pretended that either of the plaintiffs is governor or secretary or assessor of any of the counties named, and that as the court can at least take judicial notice of the fact that neither of the plaintiffs is governor or secretary of the Territory, therefore the plaintiffs can have no standing in court. But it is alleged in the affidavit on application for the writ that the plaintiffs were appointed by the governor, and confirmed by the legislative council, and are the qualified and acting trustees of the college, and these averments are admitted by the demurrer.

The governor and legislative council seem to have assumed that § 3 of the act of 1888 was invalid, in so far as it provided who shall fill the offices of trustees of the college, and to have acted on that assumption. Section

7 of the organic act of the Territory provides that "all township, district, and county officers, not herein otherwise provided for, shall be appointed or elected, as the case may be, in such manner as shall be provided by the governor and legislative assembly of the Territory of Utah. The governor shall nominate, and, by and with the advice and consent of the legislative council, appoint, all officers not herein otherwise provided for." 9 U. S. St. at Large, p. 453, c. 51 (1 Comp. Laws Utah, p. 43). We think the position of trustee provided for in the Territorial act of 1888 establishing the college is an "office," within the meaning of the seventh section of the organic act of the Territory, and must be filled by appointment by the governor, with the advice and consent of the legislative council, and it is admitted by the demurrer that the plaintiffs were appointed in this manner. The college was designed to be one of the permanent institutions of the Territory. It was to be under the control of trustees, who were to "enact by-laws and rules for the regulation of all its concerns," who, in addition to controlling all its financial affairs and business interests, were to appoint professors, teachers, and other officers and assistants of the college. It was made their duty to establish professorships, and appoint the professors and officers, with their compensation, with power to remove such officers at their pleasure. They were to take charge of the agricultural experiment station established in connection with the college, and appoint the necessary officers and assistants to conduct the experiments, and made reports to Congress, in accordance with the act of Congress approved March 2, 1887. The territorial act also provided they should "immediately enter upon the duties of their office," and, with the exception of the governor and secretary, qualify by giving bonds, with security, for the performance of their duties, and that they should each receive as compensation four dollars per day and mileage for attending the meetings of the board of trustees.

It will thus be seen that the trustees are charged with important public duties affecting the people of the whole Territory; that they are clothed with important powers; and that their duties are of a continuing nature, of indefinite duration, and that they have a fixed compensation for their services. They are therefore "officers," according to the accepted definition of that term.

. We also think that § 3 of the act establishing the college, so far as it designates the persons who shall be trustees, is in contravention of § 7 of the .organic act, and to that extent is invalid; but so far as it establishes a board of trustees for the college, to be appointed by the governor and legislative council, it is valid. *People* v. *Clayton*, 4 Utah, 421, 11 Pac. Rep. 206; *Clayton* v. *Utah Territory*, 132 U. S. 632, 10 Sup. Ct. Rep. 190.

It is contended by counsel for the plaintiffs that the members of the board of construction provided for by the fifth section of the appropriation act of 1892 are officers, and must be appointed by the governor, and that so much of the act as appoints them, and makes it their duty to expend the appropriation, is invalid, while that part of the section making the appropriation is valid, but that it must be expended by the trustees; while counsel for interveners insist that the board of construction are not officers, but merely agents or employes, but that, if it shall be held they are officers, then they must be appointed by the governor in lieu of those named in the act, and that until such appointment shall be made by the governor there is no one who is entitled to draw and expend the money. In *Clayton* v. *Utah Territory, supra,* it was held by this court, and afterwards affirmed by the Supreme Court of the United States, *ubi supra,* that the legislature of the Territory had the power to create the offices of auditor of public accounts and treasurer of the Territory, but could not provide the mode of their appointment. So in this case the legislature has authority to create a board of con-

struction for the college, but has no authority to appoint the members of the board, if they are "officers," within the meaning of the organic act. If they are officers at all, they are neither township, district, nor county officers, for their duties are not confined to any particular township, district, or county, but relate to and affect the Territory at large, and hence must be appointed by the governor with the advice and consent of the legislative council.

One who holds an office is an "officer," and it becomes necessary to ascertain what is, properly considered, an "office." The definitions of the term "office," as given by the text writers and courts, are not in entire harmony, and we cannot refer to and discuss all the definitions given, but will content ourselves with noticing a few of the more leading authorities on the subject: "'Offices' are a right to exercise public or private employment, and to take the fees and emoluments thereunto belonging." 2 Bl. Comm. 36. "'Offices' consist in a right and a corresponding duty to exercise a public or private trust, and to take the emoluments belonging to it." 3 Kent, Comm. 454. "Officers are public or private, and it is said that every man is a 'public officer' who hath any duty concerning the public, and he is not the less a public officer where his authority is confined to narrow limits, because it is the duty of his office and the nature of that duty which makes him a public officer, and to the extent of his authority." 4 Jack. Dict. 433. "A 'public office' is an agency for the state, and the person whose duty it is to perform this agency is a 'public officer.' This we consider to be the true definition of a 'public officer,' in its original broad sense. The essence of it is the duty of performing an agency; that is, of doing some act or acts, or series of acts, for the state." *State* v. *Stanley,* 66 N. C. 59. A clerk in a department of the government has been held to be an officer. *U. S.* v. *Hartwell,* 6 Wall. 385; also *Vaughn* v. *English,* 8 Cal. 39. Persons author-

orized by the legislature to appoint commissioners to build a statehouse are officers. *State* v. *Kennon,* 7 Ohio St. 546. A medical superintendent for a hospital for the insane is an officer. *State* v. *Wilson,* 29 Ohio St. 347. A commissioner for the construction of a public high- way has been held to be a public officer. *People* v. *Nos- trand,* 46 N. Y. 381. Commissioners appointed for the erection of a state lunatic asylum were held to be officers. *People* v. *Comptroller,* 20 Wend. 595. Commissioners appointed by act of the legislature to lay out and build a public road were held to be officers. *People* v. *Hayes,* 7 How. Pr. 248. A levee commissioner was held to be an officer. *Shelby* v. *Alcorn,* 36 Miss. 273. So as to prison commissioners. *Taylor* v. *Stevenson* (Idaho), 9 Pac. Rep. 642. It has been held that a fixed tenure of the position is not necessary. *Throop* v. *Langdon,* 40 Mich. 682; *State* v. *Stanley,* 8 Amer. Rep. 488; *Com.* v. *Evans,* 74 Pa. St. 124. The receiver of·a national bank is an officer of the United States. *Platt* v. *Beach,* 2 Ben. 303. It was held in *Collins* v. *Mayor,* 3 Hun, 680, that the eighth assistant clerk of the board of aldermen of the city of New York was an officer. In that· case Davis, P. J., said: "Probably the true test to distin- guish officers from simple servants or employes is the obligation to take the oath prescribed by law." Where the county court, composed of the probate judge and three selectmen, by resolution appointed a member of the court to attend to the business of the county arising dur- ing the vacation of the court, at a fixed salary, and denominated the position as "superintendent of county affairs," this court held it to be the creation of an office. *Bartch* v. *Cutler,* 6 Utah, 409, 24 Pac. Rep. 526.

In the present case the interveners allege they, "as members of such board of construction, duly qualified by giving a bond and taking the official oath required by law," and in the present case it would seem the legisla-

ture intended to establish an office by requiring the official oath to be taken. In the case of *U. S.* v. *Maurice,* 2 Brock. 103, in which it was held that an agent of fortifications was an officer of the United States, Chief Justice Marshall, with that ability and learning which characterize all his judicial utterances, said: "An office is defined to be a public charge or employment, and he who performs the duties of an office is an officer. Although an office is an employment, it does not follow that every employment is an office. A man may certainly be employed to do an act or perform a service without becoming an officer. But if the duty be a continuing one, which is defined by rules prescribed by the government, and not by contract, which an individual is appointed by government to perform, who enters upon the duties appertaining to his station without any contract defining them, if those duties continue, though the person be changed, it seems very difficult to distinguish such a charge or employment from an office, or the person who performs the duties from an officer." The appellants have cited certain cases holding that, where persons are appointed by statute to perform duties similar to those to be performed by the board of construction in this case, they are not deemed to be officers. But it would extend this opinion to too great a length to review the cases cited by appellants. The principal case relied on by the appellants is that of *Bunn* v. *People,* 45 Ill. 397, in which it was held that commissioners to build a statehouse were not officers. But in that case the court says: "There is no intention manifested in the act itself to establish an office. * * * They are not required, as they would have been if the lawmakers supposed they were officers, to take an oath to support the constitution of the United States or of this state." The members of the board of construction are charged by the statute with an important public trust, affecting the people of the

whole Territory, and with their compensation fixed by the statute. Their duties are of a continuing nature, and are prescribed by law, and not by contract, and could not be completed in less than one year, as the money can only be drawn in quarter-yearly installments. The duration of their terms of service may be much more than one year by reason of litigation, such as this case, or by the necessary time to complete the contemplated buildings, or from other causes. They are each required to give bond in the sum of $25,000, and to take the official oath; and hence we think they are officers, and must be appointed by the governor and legislative council. The fifth section of the act of March 10, 1892, making the appropriation in controversy, provides that it shall be expended by a board of construction, instead of by the trustees of the college. The act contains a clause repealing all acts and parts of acts inconsistent with it. This takes away the right of the trustees of the college to expend the appropriation, and confers it upon the board of construction. The interveners, not having been appointed by the governor as such board, are not entitled to draw and expend the appropriation. It results, therefore, that neither the trustees nor the interveners are entitled to a writ of mandate against the auditor, commanding him to issue the warrants for the money in controversy, and that the judgment of the district court must be reversed, and the cause remanded, with direction to the district court to dismiss the application of the plaintiffs and the petition of intervention of the interveners. The appropriation does not, however, necessarily fail by reason of the conclusion reached by us. Under the authority of *Clayton* v. *Utah Territory, supra,* the governor is authorized to appoint suitable persons as members of the board of construction, and that board, when appointed, will be authorized to draw the appropriation, and expend it in the erection of buildings, as contem-

plated by the statute. It is ordered that plaintiffs pay the costs made by themselves and the costs of the defendant, and that the interveners pay the costs made by themselves. Reversed.

BLACKBURN, J., concurred.

ZANE, C. J., concurred in the conclusion reached.