## CIRCUIT COURT NO. 2 OF BALTIMORE CITY

Filed September 17, 1900.

### ALBERT B. LYMAN
### VS.
### THE MAYOR AND CITY COUNCIL ET AL.

*Karl A. M. Scholtz* for plaintiff.
*Edgar H. Gans* and *Olin Bryan* for defendants.

STOCKBRIDGE, J.—

The Board of School Commissioners of Baltimore City, in compliance with the requirements of Section 100 of the City Charter, enacted by the General Assembly of 1898, appointed a certain James H. Van Sickle, Superintendent of Public Instruction. The appointee was not, either at the time of the appointment, or of the filing of the bill in this case, a registered voter of Baltimore City, and this proceeding is to enjoin the payment of his salary by the city, upon the ground that not being a registered voter of the city, he was ineligible to the position by reason of the restriction contained in Section 26 of the Charter that "all municipal officials, except females, shall be registered voters of the City of Baltimore."

The defendants demur to the bill upon the broad ground that the Superintendent of Public Instruction is not a "municipal official" within the intent of the Charter.

Definitions of a public office, and what is necessary to constitute a public officer are numerous from the time of Blackstone to the present, and give evidence that the Courts have experienced much difficulty in framing a precise formula.

In some cases the language has been extremely broad, sufficiently so to embrace every one who performed any public act whatever; see:

Rowland vs. Mayor, 83 N. Y. 376.

State vs. Stanley, 66 N. C. 59.

Others have veered to the opposite extreme, such as Throop vs. Langdon, 40 Mich. 673.

Still others have sought a definition in the enumeration of the prominent characteristics or attributes of official station, as in

U. S. vs. Hartwell, 6 Wall. 393, and a fourth class of cases has been made the test to lie in the character of the duties and whether they were prescribed by statute or by statutory authority.

Shelby vs. Alcorn, 36 Miss. 273.

Without now attempting to formulate a definition of a public officer, certain features stand out prominently in this case.

The position of Superintendent of Public Instruction of Baltimore City is one created by statute (Charter, Section 100), and so created for the first time by the Act of 1898, having theretofore been a creature of ordinance. It is authorized by the same Act which creates the Board of School Commissioners, and the filling of it does not rest in the option of the municipal corporation or school board, but it is an obligation resting on the board.

Duties of the Superintendent are enumerated in the Act, and these duties the Board has no power to abolish or abridge, though it may add to. If, therefore, the test be a statutory creation or prescribed duties, the superintendent is a public officer.

Now to examine the attributes of a public officer as distinguished from an employee, Justice Swayne, in the U. S. vs. Hartwell, 6 Wall. 393, mentions tenure, duration, emolument and duties, and to these, such authorities as Mr. Mechen and Judge Cooley add, the exercise of some part of the sovereign power of the State; the importance and dignity of the position, the taking of an official oath; the giving of an official bond, and the keeping of official records.

Yet of each and all of these it may be truly said, as in the State vs. Stanley, 66 N. C. 59, "they are but the incidents and constitute no part of the office." A given individual may be a public officer, and yet, apart from being charged with duties involving more than a single act, not enjoy one of these indicia. The question of whether a given position was or was not a public office has been the occasion for a large number of reported cases, and it is therefore pertinent to see what class of positions have been held to be a public office as distinguished from employment, and the following have been held:

A County Board of Education, Barnhill vs. Thompson, 122 N. C. 496.

A Board of Law Examiners, State vs. Hoeker, 39 Fla. 477.

An Inspector of Provisions, Kendall vs. Raybauld, 13 Utah 234.

A bridge tender appointed by a Board of Public Works, Lewis vs. Jersey City, 51 N. J. L. 242.

School Trustees, Sanborn vs. Neal, 1 Minn. 126.

Searock vs. Putnam, 111 Mass. 499.

McCoy vs. Curtice, 9 Wend. 17.

A Clerk in the Office of Secretary of State, Vaughn vs. English, 8 Cal. 39.

A Court Attendant, Rowland vs. Mayor, 83 N. Y. 376.

A Medical Superintendent of an Insane Asylum, State vs. Wilson, 29 Ohio St. 348.

The cases which look in the opposite direction are few, the leading ones being—

Butler vs. Regents, 32 Wis. 131, where it was held that a professor in the University, was not a public officer, but that the relation between him and the board was contractual.

Miller vs. Warner, 59 N. Y. Sup. 956, where a Superintendent of Fire Alarm Telegraphs was a position not created by the Legislature, or a Municipal Board or body authorized to do so.

State vs. Spaulding, 102 Iowa 644, where the Treasurer of a Pharmacy Commission was held not to be a public officer, for the reason that there was no statutory authorization of the position.

In some cases the mere designation of the position as an office in the statute creating it, has been held to constitute it an office.

Porter vs. Pillsbury, 11 How. Pr. 241.

State vs. May, 106 Mo. 488.

If, therefore, a comparison is made between the position of Superintendent of Instruction as created by the City Charter, in which it is referred to as an office, and other positions, such as have been before the Courts for construction, it is manifest that the great preponderance of opinion is in support of holding it a public office.

If an exercise of a portion of the sovereign power, or the dignity and importance of the position be adopted as a standard, there can be no question of the answer, if a bridge tender, an inspector of provisions or a medical superintendent of an insane asylum fall within the official class.

Now it must be manifest that the Superintendent of Instruction must either be a public official for all purposes, or for none. He can not be at one moment a public official so as to be relieved from personal responsibility to persons aggrieved, for the manner in which he shall perform his duties, involving an exercise of his discretion, and not an official for the purpose of continuing to hold the position. In the case of the Commonwealth vs. Morrissey, 86 Pa. 416, the question arose in an analogous manner. The statute there authorized the School Boards of the several school districts to choose a president, secretary and treasurer, and the statute further specified the duties of the treasurer. An individual appointed as treasurer took certain of the funds, and the question presented was whether he was indictable as a public official, and the Court of Pennsylvania so held.

Upon the general proposition, therefore, the conclusion seems inevitable that a Superintendent of Public Instruction, created, designated and with duties assigned, as in the present case, is a public official, *i. e.*, an officer of the municipality.

Is there then anything in the Charter itself which will lead to the result that an official of the municipality is not a principal officer, so as to come within the inhibition of Section 26 of the Charter? This is claimed to be the effect of Section 31. That section deals with the executive department of the city, and enumerates in addition to the Mayor, the various departments and officials not embraced in any department who shall exercise executive functions. And this is all. There may be, and are, municipal officials who are in no way connected with the executive branch of the city government.

This section makes no pretense to be an enumeration of the municipal officers, and at the most names but seven as such. Nothing can be deduced from this section, therefore, which will serve to support the contention of the city. Several sections of the charter were referred to in the argument in which there was claimed to be a loose use of the words office and officer, *e. g.*, Section 136. The criticism is undoubtedly well-founded, but that leads to nothing further than a return to the general consideration of who is a public officer?

So far as the inhibition of Section 26 is concerned, it is most sweeping in its terms, far more so than the provisions of the local law prior to the adoption of the Charter. The word

106

used is "all," and I know of no principle of construction which will justify the conversion of that word so as to make it mean some. No one who is a municipal official is exempt from this effect, unless so specified in direct, positive terms, and there is no such saving clause in favor of the Superintendent of Education.

It was suggested at the argument that the Superintendent of Instruction might be construed as a State and not a municipal official, and thus avoid the inhibition of the Charter. This was probably not serious, inasmuch as the incumbent of that position is appointed by virtue of a local, not general statute, selected not by the Governor or any State official, but by a local board, paid not from the State but from the City Treasury, and whose duties are local and not general in their scope.

Nor can the Act of 1900, Chapter 356, be invoked to relieve the situation. The first section of that Act is of the same scope and to the same effect as Section 26 of the City Charter, and serves to extend over the State a restriction or qualification to the holding of office which had theretofore been local in its operation. But even if by reason of the exception or saving clause embodied in the second section of the Act it is to be deemed as general in its character, it becomes an Act applicable to State officials rather than to local, and since the Superintendent of Public Instruction of Baltimore is a municipal official the Act is without effect so far as the incumbent of that office is concerned.

The demurrer will therefore be overruled.