ANASTACIO TORREZ, Plaintiff in Error, v. BOARD OF COUNTY COMMISSIONERS, SOCORRO COUNTY, Defendant in Error.

SYLLABUS BY THE COURT.

1.  COURTS—JURISDICTION.—The courts of New Mexico have power to pass upon the constitutionality of an Act of the Territorial Legislature.

2.  UNCONSTITUTIONAL LAW.—Chapter 34, Laws of 1899, held to be unconstitutional and void.

*Error* on petition of plaintiff, from judgment in favor of plaintiff, to district court of Socorro county. Judgment reversed and increased judgment entered for plaintiff.

Statement of the case by the court.

At the regular election of 1898, the plaintiff in error was elected to the office of County School Superintendent of Socorro county and qualified and began to serve as such on January 1, 1899. At the beginning of his term the salary fixed by section 4 of chapter 60 of the laws of 1897 was $600 per annum. By section 4 of chapter 25 of the Laws of 1899, approved March 1, 1899, the salary was increased to $900 per annum. By chapter 34 of the Laws of 1899, which became a law by limitation March 11, 1899, the salary was reduced to $400 per annum. On April 8, 1899, plaintiff in error brought an action for the recovery of salary for the first quarter of the year 1899, and claiming compensation for the whole period at the rate of $900 per annum. The defendant in error filed an amended answer, admitting its indebtedness at the rate of $600 per annum from January 1, 1899, to March 1, 1899; at the rate of $900 per annum from March 1, 1899, to March 10, 1899; and at the rate of $400 per annum from March 11 to March 31, 1899. Plaintiff in error demurred to the amended answer on the ground that the act of March 11, 1899, under which defendant in error justified its refusal to pay at a greater rate than $400 per annum, was unconstitutional and void as being in contravention of the Act of Congress of July 30, 1886 (24 Stat. 170), the pertinent provisions whereof are as follows: "That the Legislatures of the territories of the United States now or hereafter to be organized, shall not pass local or special laws in any of the following enumerated cases, that is to say: Creating, increasing, or decreasing fees, percentage, or allowances of public officers during the term for which said officers are elected or appointed." The court overruled the demurrer, upon the theory that the courts of this Territory have no power to pass upon the constitutionality of an act of the Territorial Legislature, and gave judgment for the plaintiff for $147.22, which was in accordance with the rates of compensation provided by the statutes mentioned. Plaintiff brings error.

H. M. DOUGHERTY and JAMES G. FITCH for plaintiff in error.

1. It is contended by defendants in error that the courts

of the territories have no jurisdiction to pass upon the validity of the acts of the territorial Legislatures, for, as asserted, such power is reserved to Congress alone. In other words, the contention is that Congress, by a direct act, may say to a Legislature you shall not pass certain laws, and if you do, they shall be null and void; and if, notwithstanding such prohibition, they do, that the courts of this Territory would have to recognize and enforce them. If this is true, nothing would be sacred, and, so far as the courts are concerned, they would be powerless; the Constitution of the United States, the Organic Act and the direct inhibitions of Congress could be all transgressed by the Legislature with impunity, and the Constitution, Organic Act and Acts of Congress would be merely directory upon a New Mexico Legislature. This doctrine is so startling that the mere stating of it would seem to brand its erroneousness.

The Constitution of the United States, Organic Act and Acts of Congress are not mere directory, but stand as a Constitution of the Territory. 25 Amer. and Eng. Enc. of Law, page 956; National Bank v. Yankton County, 101 U. S. 133; Ferris v. Higley, 20 Wallace, 380; Treadway v. Schnauber, 1 Dakota, 236; Territory v. Stokes, 2 N. M. 63.

All laws passed by a Territorial Legislature in contravention are null and void. Ferris v. Higley, supra; Godby v. Salt Lake City, 1 Utah, page 75.

An unconstitutional act is void for all purposes, and it is not even necessary for courts to so adjudge it, any person may so treat it.

"Right can not be built up under it; contracts which depend upon it for their consideration, are void; it constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made." Cooley's Con. Lim., page 188.

"An unconstitutional act is not a law; it binds no one, it protects no one." Little Rock, etc., R. R. Co. v. Worthen, 120 U. S. 101 (30: 588).

Referring to jurisdiction conferred upon Territorial court, by the Organic act, the Supreme Court of the United States in passing upon section 9 of Organic Act of Utah, which is identical with section 10 of our own Organic Act, says:

"The common law and chancery jurisdiction here con-

ferred, is a jurisdiction very ample and very well understood. It includes almost every matter, whether of civil or criminal cognizance which can be litigated in a court of justice." Ferris v. Higley, supra.

See also same doctrine in Work on Courts and their Jurisdictions, section 66, page 426, note 4, and cases cited; Territory v. Flower, 2 Montana 531-33.

The Supreme Court of the United States in discussing in another case the power and jurisdiction of the Territorial courts say:

"It is collectively co-extensive with, and corresponds to that of State courts." * * * * "In fine, the Territorial, like the State courts, are invested with plenary municipal jurisdiction." Hornbuckle v. Toombs, 18 Wallace, page 656.

"The usual way of declaring a Territorial statute, which is inconsistent with the higher laws of Congress, inoperative, is through the courts, just as in the States similar enactments would be adjudged to be unconstitutional." * * * * "Congress has neither the time nor inclination to study the different enactments to ascertain their legality, and as there are territorial courts open and free to pronounce upon the legality of questionable laws it has rarely exercised its power of annulling Territorial statutes." 25 Amer. and Eng. Enc. of Law, page 956 and note 8, and cases cited.

It is further claimed by the defendants in error that, by reason of section 1850 of the Revised Statutes of the United States, which requires that all Acts of the Territorial Legislatures shall be submitted to congress, in effect, absolutely restrains and deprives the Territorial courts of jurisdiction and they hold that before such courts would be authorized to declare a statute invalid or void, it would have to be shown that it was submitted and disapproved by Congress.

This contention is not entirely new in this Territory. The same question was raised and determined in an early case, wherein it was directly held that a statute does not have to be directly abrogated by Congress in order to make it void, where it conflicts with the Organic Act, etc. In re Attorney General, 2 New Mexico, page 58; Territory v. Stokes et al., supra.

Utah has also held that a Territorial statute does not have

to be disapproved by Congress to render it unconstitutional. People v. Clayton, Utah, 11 Pacific 206; Williams v. Clayton, Utah, 21 Pacific 398.

The Supreme Court of the United States has, however, absolutely put at rest all question about the rights of the courts of a Territory to declare Acts unconstitutional, as being in conflict with the Acts of Congress, etc., in the absence of any action by Congress. Clayton v. Utah, 132 U. S. 632; Jack v. Utah, 132 U. S. 643.

Wherein it says: "Under the power of Congress, reserved in the Organic Act of the Territory, to annul the Acts of their Legislature, in the absence of any action by Congress, is not to be construed to be a recognition of the power of the Legislature to pass laws in conflict with the Acts of Congress, under which they are created." And the court held, that the statute under discussion was void for the reason that it did so conflict.

This decision alone we think is decisive of the case "at bar."

If the above question had not been directly passed upon, as it has in the above cited cases, still it would not be an open question for this court, for the reason that the Supreme Court of the United States has been assuming the jurisdiction of both the Territorial Supreme Court and itself to declare acts void which are in contravention of the Organic Act, etc., ever since the creation of Territories; in each case where they have assumed jurisdiction to declare such acts void, it carries with it. although it may not be in express terms, a decision of the fact that they had jurisdiction. Dumphy v. Klineschmidt, 11 Wallace 610; Webster v. Reid, 11 Howard 460; Clayton v. Utah, supra; Jack v. Utah, supra: Louis v. Pima Co., 155 U. S., page 54; Howard v. Wentworth, 162 U. S., page 54.

In New Mexico there is a long line of cases, which, likewise, assumed jurisdiction. Territory v. Baca, 6 N. M. 420; Territory v. Ortiz, 1 N. M. 5; Browning v. Browning, 3 N. M. 659; Santa Fe v. S. P. & N. M. R. R. Co., 3 N. M. 126; Perea v. Barela, 5 N. M. 458, 6 N. M. 239; Coler v. Santa Fe Co., 6 N. M. 167; U. S. v. DeAmador, 6 N. M. 173; Lynch v. Greyson, 7 N. M. 26; Mining Co. v. District Court, 7 N. M. 486-493.

A few of the cases decided by other Territorial courts of like import are: Higby Estate, Utah, 5 Pacific 693; McBryde

v. Montseaon, Wash. 34 Pacific, page 559; Stevenson v. Moody, Idaho, 12 Pacific 902; People v. Jack, Utah, 11 Pacific 206; Coyle v. Byers, Arizona, 36 Pacific 499; Taylor v. Stevenson, Idaho, 9 Pacific 645; Duncan v. McAllister, 1 Utah 81.

It was contended in the court below that the question of jurisdiction was not raised in a number of the above cited cases and therefore they were not authority for the fact that the court had jurisdiction. The question of jurisdiction is different from that of most questions, and a court is bound to inquire into and decide whether raised or not, the question of the lower court's jurisdiction and of its own. 12 Amer. and Eng. Enc. of Law, page 307; Stamp v. Newton, 3 Howard, Miss. 34; Borrough of Little Meadow, 28 Penn. St. 256; Davis v. Packard, 8 Peters U. S. 312, 23-24; Acts of Congress February 25, 1889, Sec. 1; Wells on Jurisdiction of Courts, Sec. 62, page 44.

"The first point decided by any court, although it may not be in terms, is, that the court has jurisdiction, otherwise, it would not proceed to determine the rights of the parties." * * * * "The jurisdiction was as much determined as though the point had been raised and passed upon." Clary v. Hogland, 6 Cal., page 688.

Considering the cases cited by the defendants in error, to sustain this remarkable doctrine, we first desire to direct attention to the case of Lyons v. Wood, which was a case carried up from New Mexico, and the opinion of the New Mexico court was rendered upon the authority of Chavez v. Luna, 21 Pacific 344.

It was a case wherein the organization of the council and qualification of its members was called in question, and the Supreme Court of the United States simply held the power of a Territorial court was similar to the power of Federal courts and that where a bill was duly authenticated and deposited, its authentication was unimpeachable, adhering to the rule laid down in Field v. Clark, 143 U. S. 649.

How this decision throws the remotest light upon the question "at bar" we are unable to determine.

The case of Coulter v. Stafford, 6 Circuit Court of Appeals, which is relied upon as being directly in point with the contention of defendants in error, is, as we understand the case, but

an affirmance of what has long been settled as the law, that is to say, that, where under section 1850 of the Revised Statutes of the United States (which provides that Congress shall approve all laws of the Legislature of a Territory) in the absence of its disapproval, the presumption is that it is approved. In the above cited case, there was an attempt made to ask the court to declare an act of the Washington Legislature void, because Congress had not affirmatively approved it. There was no contention whatever that the act in question was contrary to the Organic Act or any Acts of Congress. Therefore we do not understand in what way it can be construed as an authority for defendants in error's contention, but if it was, it is in direct opposition to the case in the Supreme Court of the United States of Clayton v. Utah, hereinbefore cited.

We recognize that by all of the authorities it is conceded law that an act of the Legislature of a Territory need not be expressly approved by Congress if it is a "rightful subject for legislation" for, until disapproved, it is presumed that Congress acquiesced, and therefore is operative. Miners' Bank v. Iowa, 12 Howard 8; Atlantic, etc., R. R. Co. v. Lesser, Ariz.; Terr'y v. Doty, 1 Wis. 396; Sterling v. Calfee, 7 Mon. 526.

The citation referred to in Kent's Commentaries is simply to the effect that the sovereignty of a Territory is retained in the United States and therefore that Congress has the power to make what laws it sees fit untrammeled by any restrictions. This is but an affirmance of the doctrine laid down in National Bank v. Yankton County, supra, wherein it says that Congress has the power to make "a void law valid and a valid law void." But this doctrine is far from holding that where Congress has, by a direct enactment, made a certain class of legislation null and void, that the courts would have to recognize it as valid and existing.

The best illustration of the respective powers of the courts and Congress will be found in two cases carried up from Arizona.

In the first case the Supreme Court of the United States declared certain railroad bonds, issued by Pima county to be invalid as being contrary to certain acts of Congress. Louis v. Pima Co., supra.

Afterwards an act of Congress validated by an express act

these particular railroad bonds, and in subsequent case carried up to the Supreme Court of the United States they held that Congress had such power.   Utter v. Franklin, 172 U. S. 416..

2.   By the Organic Act, section 7, it is provided that the legislative power of the Territory shall extend to all rightful subjects of legislation consistent with the Constitution of the United States and the provisions of the Organic Act; but by the same section the Legislature is expressly prohibited from enacting certain classes of legislation, and Congress further reserves the right to disapprove all laws.   Here is a restricted or limited grant of legislative power to the legislative assembly. It is clearly not vested with the power to legislate upon the prohibited matters, and Congress further reserves the right to disapprove expressly any act not falling within the prohibition, if it should deem such act unwise, unjust or inexpedient.   There is a clear and obvious distinction between the two cases.   Under the first, the act is void because of a want of legislative power, and Congress has never (we believe) taken the trouble to subsequently disapprove of such act.   It has simply left it to the courts to declare such acts void, and the courts have uniformly done so.   But in the second case, when the legislative assembly has the power, but Congress has deemed an act unwise, it has expressly disapproved of it, as in the case of the "peon law" enacted by our legislative assembly at an early day. The Springer Act is to be regarded as merely an amendment of the Organic Act, further restricting the powers of the legislative assembly.   In it Congress has carefully preserved and emphasized the distinction found in the Organic Act.   By section 1 the Territorial Legislatures are forbidden to pass certain local or special laws.   By section 6 Congress has reserved its power to annul any law passed by a Territorial Legislature; and then to clinch the distinction has added section 7, "that all acts and parts of acts passed by any Territorial Legislature in conflict with the provisions of this act shall be null and void." Could language be plainer?   It seems to us the height of absurdity to contend, as defendant in error does here, that when Congress has in advance declared that certain acts of Territorial Legislatures shall be void, the courts must nevertheless treat them as valid until Congress shall have again, by a subsequent act, declared them void.   Such a contention, it seems to us

is a denial of the legislative omnipotence of Congress in the premises, for which defendants have so strenuously contended in their brief.

3. By chapter 25, section 11, Laws 1891, our Legislature created the office of County School Superintendent and provided for a per diem compensation, the maximum number of days of employment being dependent upon the number of school districts in the county. This act was clearly neither a local nor special one.

By chapter 71, section 18, Laws 1893, an annual salary was named for the School Superintendents of each county separately, that for Socorro being $850.00.

There is no doubt that under all of the authorities this was a special act, but, inasmuch as it did not go into effect until 1895, it did not change "the allowances of public officers during the term for which said officers are elected or appointed" and is therefore not in conflict with the Springer Act.

By chapter 60, Laws 1897, the counties of the Territory are divided into four classes, by name, and the compensation of most county officers is fixed according to the class of the county, Socorro and Grant counties being placed in the second class and the compensation of school superintendents in counties of that class being fixed at $600.00 per annum.

We think that there can be no doubt that the arbitrary classification of counties by name for the purpose of fixing compensation of county officers is special legislation but these parts of the act did not go into effect until January 1, 1899, and therefore did not change the compensation of officers during their terms. It would therefore appear to be valid.

On March 1, 1899, the last mentioned act was amended by chapter 24, Laws 1899, which, while continuing the same classification of counties, generally increased the compensation of the county officers mentioned; that of school superintendents of counties of the second class, to which Socorro and Grant belong, being fixed at $900.00 per annum. This act took effect upon its passage. It therefore changed the compensations of officers during their terms, but as the Springer Act does not prohibit such a change being made by a general law, but only by special law, the question is whether this act is special or general. We submit that inasmuch as it merely followed the

classification of all counties, previously made, and fixed the compensation of all county officers named in it, according to that classification it is a general law. Neither plaintiff nor defendants in this suit have questioned its validity.

On March 11, the act complained of, chapter 34, Laws 1899, was passed placing the counties of Socorro and Grant in the second class so far as relates to school superintendents only, and fixing their compensation at $400.00 per annum.

4. The spirit and object of this act are evident. It decreases the compensation of two officers, and two only in just the same manner as if they had been mentioned in name. It is on its face personal legislation. It attempts to do the very thing which it was the manifest object of the Springer Act to prevent. Inasmuch as this was conceded by the lower court, and appears not to be disputed here, only a brief citation to a few of the authorities upon special legislation is deemed necessary.

An act relating to only one municipality, named in it, a clearly special or local act. People v. Hills, 35 N. Y. 449; People v. O'Brien, 38 N. Y. 193; Gaskin v. Meek, 42 N. Y. 186; State v. T. P. of Mullica (N. J.) 17 Att. 941.

The inhibition against special or local legislation does not deprive the Legislature of the power to classify, but such classification must be a natural, not an arbitrary one; the class to be affected must consist of individuals distinguished by some important characteristic to which the purpose of the law relates, and must embrace all those so characterized. It is not the form of the statute, but its effect, which must be looked to, to determine its special character. Anderson v. Trenton, 42 N. J. L. 186; Gibbs v. Morgan, 39 N. J. Eqy. 126; Closson v. Trenton, 48 N. J. L. 438; Gulf C. & S. F. Ry. v. Ellis, 165 U. S. 150 (41 : 666) ; Harwood v. Wentworth, 162 U. S. 547 (40 : 1069) ; Territory v. Baca, 6 N. M. 420, 435 ; Nichols v. Walters, 33 N. W. Rep. 800 Minn.; Appeal of Ayars, 16 Atl. Rep. 356 (Pa.) ; Trust Co. v. Whited, 49 N. W. Rep. 318; State v. Boyd, 19 Nev. 43.

A classification of counties or cities by population for the purpose of fixing the compensation of their officers has usually been held a proper classification with reference to the object in view. Harwood v. Wentworth, supra.

As to just what extent such a classification may be carried

the authorities do not seem to be uniform. In some states where a class is designated which can apply to only one city or county in the state, the court will take judicial notice of that fact and hold the act special. State v. Herrmann, 75 Mo. 390; Divine v. Board of Commissioners, 84 Ill. 590.

Or where only one class is provided for, and that class does not include all cities or counties. Earl v. Bd. of Education, 55 Cal. 489; Darcy v. San Jose, 38 Pac. Rep. 500 (Cal.); Morrison v. Bachart, 5 Atl. Rep. 739 (Pa.).

While in other states it is held that a classification such that only one city is in each class or grade does not render the act special. State v. Brewster, 39 Ohio St. 653; State v. Pugh, 43 Ohio St. 98; State v. Cincinnati, 40 N. E. Rep. 508, Ohio; Van Ripper v. Parsons, 40 N. J. L. 123.

But the validity of such a classification depends upon whether or not other municipalities may attain to the same class. State v. Pugh, supra; State v. Cincinnati, supra.

Thus where a class of cities or counties is designated by population according to the last census, the acts were held special. Coutieri v. New Brunswick, 44 N. J. L. 58; State v. Jersey City, 45 N. J. L. 297; State v. Mitchell, 31 Ohio St. 607; State v. Boyd, 19 Nev. 43.

But in the present case it matters not which line of authorities is followed, because under all of them the act complained of is both special and local. It arbitrarily selects two counties, and while leaving them in the second class as to all other officers attempts to place them in the third class in reference to school superintendents only. It is, in no proper sense of the word any classification at all.

SILAS ALEXANDER for defendant in error.

1. Section 1866, Revised Statutes United States: "The jurisdiction both appellate and original, of the courts provided for in section nineteen hundred and seven and nineteen hundred and eight, shall be limited by law."

Now a Territorial court being a special court created by act of Congress, its jurisdiction is limited to such purposes as are expressly conferred by Congress, and perhaps such inherent powers as are necessary to execute such express powers. It can have no other.

It will not do to say that because Congress has given the Territorial courts common law jurisdiction, that it follows that the court has authority to declare void a territorial enactment, for common law courts had no such power.

Furthermore, court created with special powers by statute, the statute is construed strictly against implied power.

We believe that the contention of defendant in error is in harmony with the later decisions of the higher and superior courts of the federal government upon the lone proposition as to the jurisdiction of territorial courts to pass upon the constitutionality of a territorial enactment, and that the authorities herein cited absolutely and unequivocally support such conclusions. Not only by reason of the limited jurisdiction of territorial courts, but because of the assumption of power never conferred. We do not believe that a like question growing out of state legislation, which has been taken up from the district and supreme courts of a state and passed upon by the federal courts, affords this court any aid in passing upon the question in the case at bar. Because the congress of the United States has by positive enactment reserved such power unto itself in so far as territorial enactments are concerned, and it has been decided in innumerable cases that this power of passing upon the validity or constitutionality of territorial enactments, exists in congress alone, even though not specially reserved. "Such a power is an incident of sovereignty and remains until granted away." Sutherland on Statutory Construction, section 23; National Bank v. County of Yankton, 101 U. S., page 129.

Furthermore such cases arising out of state legislation are not in point, for this reason. In the states as in the United States governments there are three separate, distinct and coordinate departments, and it follows as a necessary condition for the preservation of such equal and independent powers, that the judicial department must have the power of declaring void and unconstitutional statutes of such Legislatures; otherwise the Legislature could legislate out of existence the other departments or make them dependent and inferior and thus destroy the government itself and utterly set aside the will of the people.

But such a state of facts does not exist in a territory, for here each department of the local government is dependent on

congress, and congress by the judicial power reserved and inherent in itself over territories, can prevent such a condition. And even though it may be said that the organic act of a territory takes the place of a Constitution in a state, it does not follow that the courts in the two jurisdictions have the same powers, because, as has already been said, the very form of government in the states necessitates the jurisdiction of its courts to pass upon the constitutionality of its statutes. While in the territories congress takes the place of the state court. The state courts, therefore, have original jurisdiction and power to pass upon the constitutionality of an act of a state Legislature, but such power has never been conferred by congress upon the judicial department of the Territory of New Mexico. Instead, it has been specially reserved by congress, wherein such power alone resides, retaining original aid exclusive jurisdiction over the acts of the territorial Legislature, there being no power in any other branch of the government that can pass originally upon such acts; territorial courts have only limited jurisdiction. Sections 1866 and 1907, Revised Statutes of the United States.

Therefore, we respectfully insist that our position is tenable and in harmony with the organic act creating this territory and all supplemental acts thereto, and believe it to be the most reasonable and logical construction of the law governing in this case and that this court can be guided only by decisions of superior courts upon questions alone growing out of territorial legislation, and not by state courts, nor by the courts of the territory in which the constitutionality of an act of its legislature has been brought into question, but in this instance only by the congress of the United States, by disapproving such act, before any federal court even, has the power to impeach its validity, it being conceded that courts of the United States have power to declare void an act in conflict with the constitution or law of the land. It is not admitted that territorial courts have that power for they are not courts of the United States within the meaning of the Constitution. Clinton v. Englebrict, 13 Wall U. S. pp. 447; Good v. Martin, 95 U. S. pp. 98; Reynolds v. U. S. 98, pp. 154; Hornbuckle v. Toombs, 18 Wall pp. 648.

Territorial courts, then, are not constitutional courts, in which the judicial power conferred by the constitution on the general government can be deposited. They are incapable of

receiving it. They are mere legislative courts. The jurisdiction with which they are invested is not a part of the judicial power which is defined in the third article of the constitution, but is conferred by congress. Am. Insurance Co. v. Center, 1 Peters U. S. 511.

Territorial courts are legislative courts and the distinction between federal and state jurisdiction has no foundation in territorial governments. Under the constitution no such distinction exists either in respect to the jurisdiction of the courts or the subjects committed to their cognizance. Bremer v. Potter, 9 How'd., U. S. 242.

If a territorial court should assume jurisdiction, and declare some act of the territorial legislature valid, and such act should or would be in conflict with the Constitution of the United States, and congress under its sovereign power and reservation should disapprove such act under the authority of section 1850, Revised Statutes of the United States, then, and in that event, the court of limited, local and inferior jurisdiction would appear in the absurd attitude of attempting to abrogate the Constitution of the United States, in so far as such territorial enactment conflicted and was in contravention to the Constitution.

The plaintiff in error will no doubt undertake to hinge the jurisdiction of the court upon its common law and equity powers, but such authority is not inherent in common law and equity courts, for it should not be forgotten that the setting aside of a legislative enactment has never been considered a function of common law or equity courts. Such a power grows out of the nature of the government or else is expressly conferred by constitution or statute. Where these powers are not thus conferred, the legislature is supreme, irresponsible and omnipotent. Congressional power over the territories corresponds with the authority of the British Parliament in the British realm. "It can make and unmake any and every law, change the form of government or the succession of the crown, interfere with the course of justice, extinguish the most sacred private rights of the citizen. It is the only and sufficient depository of authority," and with it no court has power to interfere. Brice Commonwealth, Vol. 1, p. 33; Chitty's Blackstone, Vol. 1, pp. 160-162.

As a matter of fact the organic act of a territory is merely directory and not mandatory. This is proven by the fact that congress has heretofore approved territorial enactments, which are directly in conflict with the organic act. Now had congress intended to make null and of no effect such statutes, it would not thereafter approve them, for what is void can not be approved, for it never did exist and it is impossible to approve that which does not exist. The only reasonable conclusion, therefore, is that the organic act is merely directory. It is intended to warn the legislature that if it attempts to pass such laws that they will in all probability (but not necessarily) set them aside. The organic act of a territory more nearly corresponds with Magna Charta or the Bill of Rights. They may be set aside at will by parliament. Brice Commonwealth, Vol. I, pp. 237; Chitty's Blackstone, Vol. I, pp. 160-162.

But the people who elect the parliament would in all probability set the parliament aside, as congress would doubtless set the statutory enactments aside which conflict with the organic act.

In the case of the Miners' Bank v. the State of Iowa, 12 Howd. p. 1, is a case in point, and fully supports the contention of defendant in error. In that case it is held that in order that the United States courts will take jurisdiction there must be "drawn in question the validity of a statute or an authority exercised under the United States, and the decision be against their validity;" or "where is drawn in question the validity of any statute of, or an authority exercised under any state, on the ground of their being repugnant to the constitution, treaties or laws of the United States, and the decision is in favor of their validity; or where is drawn in question the construction of any clause of the constitution, or a treaty or statute of, or commission held under the United States, and the decision is against the title, right, privilege or exemption specially set up under that clause of the constitution, treaty, statute or commission." By a comparison of the record it will be seen that there is nothing of this kind in the case at bar. "In order to give this court jurisdiction, the statute, the validity of which is drawn in question, must be passed by a state, a member of the union." (ib).

If therefore, the United States courts have no jurisdiction,

to declare void, acts of a territorial assembly, will it be presumed that a territorial court has such power in the absence of a provision expressly conferring such power.

"The control of these territorial governments properly appertains to that branch of the government which creates and can change or modify them to meet its views of public policy, namely, the congress of the United States." (ib). Congress may not only abrogate laws of the territorial legislatures, but it may itself legislate directly for the local government. "It may make a void act of the territorial legislature valid, and a valid act void."

"In other words it has full and complete legislative authority over the people of the territories." National Bank v. County of Yankton, 101 U. S. 133; (56 Fed.—U. S. App.—); Coulter v. Stafford (Circuit Court of Appeals, Ninth Circuit, May 8, 1893).

The defendant in error, contends that the above case disposes of absolutely the question involved in the case at bar, from which it will be observed that the court (Judge Hawley rendering the opinion as late as 1893) passed directly upon the question contended for by defendant in error, and seems to be the first instance where any of the courts of superior jurisdiction, have construed fully and beyond question, section 1850, Revised Statutes of the United States, holding unequivocally that territorial courts can not pass upon the constitutionality of an act of the territorial legislature, because said section 1850 is a constitutional restriction upon the judiciary of the territory to impeach the validity of an act of the territorial legislature by assuming original jurisdiction.

The court in that case says:

"The only other preliminary question deserving of notice is the contention made by defendants' counsel that certain laws of the Territory of Washington are not binding, because by the enabling act under which Washington Territory was organized, and by section 1850, Revised Statutes of the United States, all laws passed by the legislature are required to be submitted to congress for approval. Section 1850 reads as follows:

"All laws passed by the legislative assembly and governor of any territory (except certain named territories, of which

Washington is not one) shall be submitted to congress, and, if disapproved, shall be null, and of no effect.'

"We are of opinion that, in order to impeach the validity of any act under this section, the party claiming it to be valid, would have to show that it had been submitted to congress, and that it had been disapproved. In the absence of any evidence or specific finding of any action upon the part of congress, we are bound to presume that the laws of Washington territory are of binding force and effect."

In this connection and upon this proposition, defendant in error desires to go of record by asserting that nowhere else in the history of American jurisprudence has the question at bar ever been directly passed upon by any court of competent jurisdiction.

The same doctrine laid down in the case here last cited is recognized in the case of Lyons v. Wood, 153 U. S. p. 662. The supreme court as late as 1894 says: "Referring to section 7, of the organic act of the territory, the court declined to decide whether in the general terms therein used, conferring legislative power upon the legislative assembly of New Mexico, it was intended to confer the usual and ordinarily incidental power to determine finally the election qualification and return of the members, but concluded by that section, all laws passed by the legislative assembly and governor, had to be submitted to congress, and if disapproved, were null and void and of no effect. It must be presumed that these acts were so submitted, and there being nothing to show that they were disapproved and that they had received the passive assent of the congress and had been in that way approved and that therefore there was nothing upon which to ground the jurisdiction of the court over the subject sought to be received."

"The fact that resort to congress was open to those who objected to the legality of the acts passed by this legislative assembly is not without significance in inquiring into the jurisdiction of the courts in the premises."—supra.

We think this case exactly in point. It is admitted that the act referred to was passed by the Legislature, and if so passed it must be presumed (according to the above citation) that it has been passively approved at least by Congress; and if so approved by Congress, it becomes an act of Congress over which

no court has the power to pass upon its validity unless it violates some section or principle of the Constitution of the United States.

Congress has a right to approve any territorial enactment of the legislature even if in conflict with the organic or Springer acts, and since it must be presumed that Congress has approved the act in question, it is supreme in the Territory, and the organic and Springer acts, if in conflict with it to that extent, are subordinate.

In the advance sheets of the United States supreme court reports, dated April 22, 1899, at page 503, Guthrie National Bank v. City of Guthrie, in error to the supreme court of the Territory of Oklahoma to review a judgment of that court affirming the judgment of the district court of Logan county in that territory, dismissing proceedings by the Guthrie National Bank, against the City of Guthrie to enforce certain claims against the said city, was reversed and case remanded, with directions to reverse the judgment of the district court, and that the last named court hear the case upon its merits, from which decision it will be seen that the same doctrine in substance is maintained for which defendant in error contends.   The district court of Oklahoma territory, in this case, assumed to pass upon the constitutionality of an act of the territorial legislature, holding the act void and refused to pass upon the merits of the case for want of jurisdiction.   The concluding paragraph of the opinion of the court on page 507 of said sheet is here quoted:

"We are of the opinion that the district court erred in dismissing these proceedings on the ground of the invalidity of the act under which they were taken, and that the supreme court of the territory erred in affirming that judgment of dismissal, and we therefore reverse the judgment of the latter court and remand the case with directions to that court to reverse the judgment of the district court with directions to the district court to proceed to a hearing of the claims upon their merits."

Chancellor Kent lays down the same doctrine in volume 1, sections 384-386, eleventh edition of his "Commentaries" contended for by defendant in error, and depreciates our present system of territorial governments as dangerous to the best interests of the inhabitants thereof; and, referring to this some-

what novel proposition in regard to our system of government respecting territories (so hinted at as such), by Mr. Kent, we here quote his language:

"Such a state of absolute sovereignty on the one hand, and of absolute dependence on the other, is not congenial with the free and independent spirit of our native institutions; and the establishment of distant territorial governments, ruled according to will and pleasure, would have a very natural tendency, as all proconsular governments have had, to abuse and oppression."

So it will be seen that the Constitution of the United States confers upon Congress absolute sovereignty with respect to the control of the territories of the United States, and absolute subserviency upon the part of the territories, and precludes any supervision by the judiciary of the United States over any congressional act of Congress regarding the territories and has refused to recognize any supervisory jurisdiction by the judiciary department of the government, thus reserving to itself the sole right to pass upon territorial enactments.

It must be admitted that a territorial court is a court of limited jurisdiction and has only such powers as have been conferred by Congress, which power may be modified, changed or taken away at any time. The plaintiff in error, therefore, must show wherein power has been conferred upon the territorial court to declare unconstitutional and void a territorial enactment.

The appellant has cited the court in his brief, twenty-three decisions from the supreme courts of the several territories as authorities upon the proposition he contends for, and asks the court to recognize them as controlling, with reference to which, defendant in error asserts, are no criterion to guide the court in its investigations of its authority to determine whether it has such jurisdiction, because if our position is tenable, these several courts in assuming such jurisdiction, it must be clear, have usurped the powers of Congress, hence they shed no light. They are unsound in principle and void in law.

As to the United States cases cited by appellant, we respectfully submit that upon examination of them it will be found that in no instance have these courts even pretended to pass directly upon the question at bar.

PARKER, J.—(After stating the foregoing facts.)   It is not, nor has it ever been since the case of Marbury v. Madison, 1 Cranch (U. S.) 137, decided in 1803, necessary to cite authority to the proposition that it is not only within the power, but it is the duty of the courts to declare an act of the Legislature void which is in conflict with the provisions of the fundamental law of the particular jurisdiction concerned. Chief Justice Marshall stated the proposition so clearly, and argued it so conclusively, that it was at once adopted as correct, with the exception of a few dissenting voices, and has ever since been followed in all the states.

What then is the fundamental law of the Territory? New Mexico was organized as a territory by Act of Congress approved September 9, 1850 (C. 49, Sec. 2, Vol. 9, p. 447).   Section seven of that act provides "That the legislative power of the Territory shall extend to all rightful subjects of legislation, consistent with the Constitution of the United States and the provisions of this act.   All the laws passed by the legislative assembly and governor shall be submitted to the Congress of the United States, and if disapproved shall be null and of no effect."   Section ten of that act provides that "The jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and justices of the peace, shall be as limited by law: COURTS: jurisdiction. *Provided,* that * * * * the said supreme and district courts, respectively, shall possess chancery as well as common law jurisdiction."   Section 1851 of the Revised Statutes of the United States provides "The legislative power of every territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States."

"It has passed beyond the stage of controversy into final judgment" that the people of the United States, as sovereign owners of the National Territories, have supreme power over them and their inhabitants.   Murphy v. Ramsey, 114 U. S., pp. 15, 44.   This power is exercised by the general government, through the Congress of the United States.   The Constitution of the United States, the Organic Act, under which a territory is organized, and acts supplemental, or in addition, thereto,

form the Constitution of a territory.   Nat. Bank v. County of
Yankton, 101 U. S. 129, 133; Ferris v. Higley, 20 Wal. (U.
S.) 375, 380; In re Attorney-General, 2 N. M. 58; Clayton v.
Utah, 132 U. S. 636.  Any act of the Territorial Legislature in-
consistent with these acts of Congress is unconstitutional and
void .   Ferris v. Higley, *supra.*

It is, however, contended by counsel for defendant in error
that no power has been granted territorial courts to pass upon
and declare the constitutionality or unconstitutionality of an
act of the territorial legislature, that power, it is alleged, being
by Congress expressly reserved to itself by section seven of
the Organic Act quoted above.   But to this contention we
cannot agree.   Were this an original proposition, we would
have no hesitancy in declaring ample power to exist in the
courts of this Territory to deal with the question presented.
There is, however, ample authority for such a conclusion.   In
Hornbuckle v. Toombs, 18 Wal. (U. S.) 656, it is said:   The
jurisdiction of the Territorial courts is collectively coextensive
with and correspondent to that of the state courts."   In Ferris
vs. Higley, *supra,* it is said, "The common law and chancery
jurisdiction here conferred on the district and supreme courts
is a jurisdiction very ample, and very well understood.   It
includes almost every matter, whether of civil or criminal cogni-
zance which can be litigated in a court of justice."   This pro-
position was fully gone into and decided in favor of the power,
in the case of In Re Attorney General, 2 N. M. 58.   See also
People v. Clayton 11 Pac. (Utah), 206; Williams v. Clayton,
21 Pac. (Utah), 398; Clayton v. Utah, 132 U. S. 632.

It is urged by counsel for defendant in error that section
seven of the Organic Act amounts to a reser-
vation to Congress of all power of control
UNCONSTITU-     over Territorial legislation.   This contention,
TIONAL law.     it seems perfectly apparent, is not well found-
ed.   Congress has already limited legislative
power to such acts of legislation as may not
be "inconsistent with the Constitution and laws of the United
States."   Any territorial legislation that exceeds this limita-
tion, Congress has already said, in effect, is void.   Why, then,
should it be necessary for Congress to again annul it?   It is
void *ab initio.*   But this is not an open question.   It is said,

in Clayton v. Utah, supra: "It is true that in case of doubtful construction the long acquiescence of Congress and the general government may. be resorted to as some evidence of the proper construction, or of the validity, of a law.   This principle is more applicable to questions relating to the construction of a statute than to matters which go to the power of the legislature to enact it.   At all events, it can hardly be admitted as a general proposition that under the power of Congress reserved in the organic acts of the territories to annul the acts of their legislatures the absence of any action by Congress is to be construed to be a recognition of the power of the Legislature to pass laws in conflict with the Acts of Congress under which they were created."   And in People v. Clayton, and Williams v. Clayton, *supra,* it is expressly held that the language used by Congress in limiting legislative power in territories has no such effect as is contended for by counsel for defendant in error, and that the power to pass upon the constitutionality of a legislative act rests in the courts.

This court has in numerous cases assumed to have the jurisdiction claimed for it by plaintiff in error; and the assumption of such jurisdiction necessarily involves a decision that such jurisdiction exists.   Some of these cases are cited.   Territory v. Baca, 6 N. M. 420; Perea v. Barela, 5 N. M. 458, 6 N. M. 239; Coler v. Santa Fe Co., 6 N. M. 88; U. S. v. De Amador, 6 N. M. 173; Mining Co. v. District Court, 7 N. M. 486-493; Territory v. Ortis, 8 N. M. 154; In Re Wilson, 10 N. M. 32, 60 Pac. 73.   See also Money's Digest, Title, Constitutional law, where all the New Mexico cases are collected.

There is no contention on the part of the defendant in error that the Act of March 11, 1899, of the Territorial Legislature mentioned above, does not contravene the provisions of the Act of Congress of July 30, 1886, *supra.*

The Act of March 1, 1889, seems not to be open to the same criticism, it being operative in all counties in the Territory and the increase being uniform.   At least no objection is made to it by defendant in error.

· It follows from the foregoing conclusions that the district court committed error in its judgment, and the same will be reversed and the plaintiff will be entitled to judgment in this court for his salary for the first quarter of the year 1899

at the rate of $600 per annum from Jan. 1 to March 1st, 1899, and at the rate of $900 per annum from March 2nd to March 31, 1899.   And it is so ordered.

Mills, C. J., McFie, and Crumpacker, JJ., concur.

McMillan J. did not participate in this decision, he not having heard the argument.

———————

[861.   February 25, 1901.]

### SYLLABUS BY THE COURT.

